PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/15/95**

TENTH CIRCUIT

---

MARTA M. MOTLEY,                    )
                                    )
      Plaintiff-Appellant,    )
                                    )
  v.                                )    No. 95-6014
                                    )
MARATHON OIL COMPANY,               )
                                    )
      Defendant-Appellee.     )

---

Appeal from the United States District Court
for the Western District of Oklahoma
D.C. No. CIV-93-2097-R

---

Mark Hammons, Hammons & Associates, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Carolyn G. Hill, (Shelia D. Tims and Lynn O. Holloman, with her on the brief ) Andrews, Davis, Legg, Bixler, Milsten & Prince, Oklahoma City, Oklahoma, for the Defendant-Appellee.

---

Before TACHA, LOGAN, REAVLEY,[*] Circuit Judges.

---

REAVLEY, Circuit Judge

    Marta Motley was laid off as part of a reduction in force by her employer, Marathon Oil Company.  Motley, who is white, sued Marathon, claiming that Marathon discriminated against her on account of her race, in violation of federal and state law.  The

---

    [*] The Honorable Thomas M. Reavley, United States Court of Appeals, Fifth Circuit, sitting by designation.

jury returned a verdict in favor of Marathon, and the district court entered a take-nothing judgment against Motley. Motley appeals, complaining of district court discovery and evidentiary rulings. We affirm.

BACKGROUND

In 1992 Marathon decided that a nationwide reduction in force was necessary. A company restructuring oversight committee (ROC or Committee) was involved in the layoffs. Marathon presented evidence at trial that Motley had been employed as a "contracts analyst" at the Oklahoma City office, and that Marathon decided that this office did not need a contracts analyst because there was not enough work to justify the position. Motley's position was eliminated after she was terminated. Marathon's evidence was that it did not terminate any employees whose job positions were not to be eliminated.

Motley offered evidence that the company considered "EEO reasons" or "EEO purposes" in making its termination decisions. For example, her supervisor, Don Morrison, who testified on her behalf, stated in a memorandum that "even [Morrison's supervisor] has indicated that [Motley] shouldn't have been on the final list and wouldn't have been if it hadn't been for human resources in Houston insisting that the two black women who were subpar performers stay off the list for EEO reasons." She claims that Ronald Becker, the regional manager, was instructed to remove a number of minority employees from lists of employees to be terminated, and that these minority employees were replaced with

2

non-minority employees on the lists.  Marathon countered that the four minority employees initially placed on a termination list were removed from the list because Marathon decided that their jobs were not to be eliminated.  Marathon's witnesses also said that the lists where names were substituted were lists of "nonexempt" employees, and that Motley was an "exempt" employee.  Exempt employees are not paid overtime and operate with less supervision than nonexempt employees.

DISCUSSION

I.  *Discovery Ruling*

John Miller, an in-house attorney for Marathon, advised the company regarding the reduction in force.  Marathon prepared a privileged document log.  One document was described as a "[d]raft of a May 21, 1992, memo from the Law Department on proposed guidelines for implementation of involuntary terminations."  Another was described as "[l]ists prepared at the request of John Miller, attorney, which he used to advise the [ROC]."  Motley moved to compel the production of these documents, arguing that they were not privileged because they were prepared in the ordinary course of business and not for the purpose of giving legal advice, and because they fell within the crime-fraud exception to the attorney-client privilege.  Motley also argued that Marathon had waived the privilege.  Miller's deposition was taken, and he also filed an affidavit in opposition to the motion to compel.  With the benefit of the affidavit, the Morrison memorandum, the deposition of Miller and

3

portions of Becker's deposition, as well as other materials, all of which were before the court, the court denied the motion to compel. The district court did not, however, conduct an *in camera* inspection of the documents as Motley requested.

Our analysis begins with basic principles. The party seeking to assert a privilege has the burden of establishing its applicability. *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985). Generally, "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts, and a denial of a motion to compel discovery will not be disturbed absent abuse of discretion." *Martinez v. Schock Transfer and Warehouse Co.*, 789 F.2d 848, 850 (10th Cir. 1986).

Motley argues that the documents are not protected by the attorney-client privilege because Marathon failed to show that they were prepared for the purpose of giving legal advice rather than for business purposes. We agree with Motley that the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege. However, Miller stated by affidavit that he prepared the draft memorandum and that it contained legal advice for the corporate restructuring of Marathon. He also stated that the lists in question "were prepared for my use in giving legal advice to the [ROC]," that the memorandum and lists were treated as confidential documents, and that "I did not render business advice in the Memorandum and Lists." He further testified at his deposition that he served in the capacity of a legal advisor to

4

the Committee. Motley offered no evidence directly contradicting these statements. We cannot say that the district court abused its discretion in concluding that the communications in issue were for the purpose of providing legal rather than business advice.

Motley next argues that the documents are not protected by the attorney-client privilege because they fall within the crime-fraud exception to the privilege. As evidence in support of this argument, Motley offered to the district court the Morrison memorandum discussed above. She also presented notes prepared by Becker, Becker's deposition testimony, an interrogatory answer (discussed in more detail below), and the affidavit of her own counsel, all of which she claimed showed that Marathon engaged in racial discrimination when it effected its reduction in force.

Motley argues that illegal racial discrimination is a tort and that the crime-fraud exception is not limited to crime and fraud, but extends to attorney communications made in furtherance of the commission of a tort. While Motley cites some authority in support of this argument,[1] we have not extended the privilege to torts generally. Instead, we have construed the exception as providing that "[t]he attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." *In re Grand Jury Proceedings*, 857 F.2d 710, 712 (10th Cir. 1988), *cert. denied*, 492 U. 905 (1989); *accord, In re Grand*

---

[1] *See* 24 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5501 at 518 (1986).

5

*Jury Proceedings, Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983).

Motley asserted both federal and state causes of action. As to

state causes of action, a federal court should look to state law

in deciding privilege questions. F ED. R. E VID. 501; *White v.*

*American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990).

We have held that "some type of prima facie showing of a crime or

fraud is required under Oklahoma law in order to trigger the

applicability of the crime-fraud exception." *Id.*

The party claiming that the crime-fraud exception applies

must present prima facie evidence that the allegation of attorney

participation in crime or fraud has some foundation in fact.

*Vargas,* 723 F.2d at 1467. The determination of whether such a

prima facie showing has been made is left to the sound discretion

of the district court. *Id.*; *In re Grand Jury Proceedings,* 727

F.2d 941, 946 (10th Cir.), *cert. denied*, 469 U.S. 819 (1984).

Here we find no abuse of discretion by the district court.

Motley at most offered some evidence of race-based decisions by

Marathon when it carried out the reduction in force. Motley

offered no evidence that the two documents in issue were prepared

in furtherance of a crime or fraud.

Motley separately complains that, in finding the crime-fraud

exception inapplicable, the district court did not conduct an *in*

*camera* review of the documents in issue. In *United States v.*

*Zolin*, 491 U.S. 554 (1989), the Supreme Court held that a

district court may conduct an *in camera* review to determine the

applicability of the crime-fraud exception, but only if the party

6

requesting such a review makes a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the documents may reveal evidence to establish that the crime-fraud exception applies. *Id*. at 572, 575–76. Whether to conduct an *in camera* review is left to the sound discretion of the district court. *Id*. at 572. As explained above, Motley at most made a showing of race-based decisions by Marathon in carrying out the reduction in force. Since the court correctly ruled that the crime-fraud exception does not extend to tortious conduct generally, but is limited to attorney advice in furtherance of a crime or fraud, for the reasons stated above the court did not abuse its discretion in denying the request for an *in camera* review of the documents.

Motley argues that Marathon waived the attorney-client privilege, for two reasons. She argues that Marathon waived the privilege by failing to assert it timely, pointing out that Marathon failed to comply with a local rule requiring the tender of a privileged document log by or prior to the status conference. Marathon points out that (1) suit was filed in November of 1993 and Motley did not begin discovery until July 5, 1994, 58 days before the discovery cutoff, and (2) Marathon's counsel disclosed the identity of the two disputed documents on August 1, 1994, as soon as she learned that they existed and four months before trial. In these circumstance we cannot say that the district court abused its discretion by failing to order the

7

production of otherwise privileged documents due to the timeliness of the assertion of the privilege. We are particularly loath to find that a district court abused its discretion with a decision regarding the enforcement of its own local rules.

Motley also claims that Marathon waived the privilege by relying on advice of counsel "as an explanation for the employment actions in question," and using attorney-client communication "as both as a sword and a shield." Motley relies on the following conduct of Marathon. In one interrogatory answer, Marathon stated that Becker made certain changes, which were recommended by the ROC "upon advice of counsel," to a list of employees to be terminated. The employees in question were "Records Processors," and did not hold Motley's "Contracts Analyst" position. Becker testified in his deposition that changes were made on one list because his boss told him to do so "for legal and business purpose reasons." Marathon designated Miller, an in-house lawyer, as its representative to testify in a deposition noticed to discover the activities, functions and decisions of the ROC.

To be sure, there is some authority that attorney-client communications cannot be used both as a sword and a shield[2], as when a party defends the conduct which is the subject of the suit by relying on advice of counsel. Here, however, Marathon did not

---

[2] *E.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

8

attempt to justify its termination of Motley on the basis of advice of counsel. It did not claim that Motley was terminated because of a recommendation of counsel; instead, it defended its decision, which was part of a company-wide reduction in force, based on a lack of sufficient work to justify the position Motley held. Further, the mere fact that it designated a lawyer, pursuant to FED. R. CIV. P. 30(b)(6), as its corporate representative at one deposition, is a wholly insufficient ground to hold that Marathon waived its attorney-client privilege. Although Miller's counsel did state at the deposition that he would not allow questions regarding the two privileged documents, Miller did not otherwise assert the privilege a single time at his deposition. Further, although Miller's memory regarding the ROC was far from perfect, we agree with the district court that "lack of memory . . . is not the same as the assertion of the attorney-client privilege." Motley could have deposed the members of the ROC if she had timely attempted to do so. Motley did file a motion to extend the discovery cutoff to allow her to depose a member of the ROC, but does not appeal the district court's denial of that motion.

II. *Evidentiary Ruling*

Motley complains of a single evidentiary ruling by the district court. The court allowed Becker to testify about his understanding of a policy of the Committee. Specifically, he testified on direct examination that based on his review of Miller's deposition, the Committee did not permit the termination

9

of an employee unless that employee's position was to be eliminated and no replacement was to be hired.  Motley objected on grounds that the witness was attempting to characterize the testimony from the deposition, and that the deposition itself was the best evidence of the Committee's policy.  She also complains on appeal that the testimony was not based on personal knowledge, and that a lay witness cannot rely on hearsay in order to offer an opinion as to another's motive.

The district court has broad discretion in determining the competency of a witness to testify, and its decision will not be reversed absent an abuse of discretion.  *United States v. Gomez*, 807 F.2d 1523, 1527 (10th Cir. 1986).  Further, under FED. R. EVID. 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."  Even assuming that the court erred in allowing the testimony, Motley does not establish that her substantial rights were affected.  Miller's deposition testimony, on which Becker based his testimony, had already been read to the jury, and Becker in fact gave an accurate characterization of Miller's testimony.[3]  Further, on cross-examination Motley's counsel revisited the subject of what Becker knew about

---

[3]     Miller testified by deposition:  "As I told you, no one would be terminated if he or she would be -- were to be replaced. So if you were white, black, male or female, it didn't matter. If you were going to be replaced, you could not be terminated." Becker testified that, based on his review of Miller's deposition, "what I learned was that [the] oversight committee would not permit us to terminate or let go anybody who was in a job that we weren't eliminating. . . ."

10

Marathon's policy of not terminating employees whose jobs were not to be eliminated.  Becker's testimony was merely cumulative of other testimony the jury heard.  *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1332 (10th Cir. 1984) (admission of soil report over hearsay and foundation objections did not affect party's substantial rights under Rule 103(a) where such "documentary evidence was, at worst, cumulative.").

AFFIRMED.